Grafton,
April 3, 1906.

## RICHARDSON v. THORPE.

Where the words of an alleged libel are capable of more than one meaning, it is the office of the inuendo to point out the sense in which it is claimed they were used; and if as matter of law they are susceptible of the construction so placed upon them, the question whether they were used in the sense charged is one of fact for the jury.

A declaration setting forth a newspaper article which charges the plaintiff with fraud and dishonesty in his business transactions is not demurrable because no special damage is alleged.

CASE, for libel. The declaration alleges, in substance, that the plaintiff is an honest man and a good citizen, and that the defendant, well knowing these facts and intending to injure the plaintiff, maliciously published in his newspaper the following false and

libelous words concerning him: "Another would-be statesman [meaning the plaintiff], who a few years ago owed the farmers of this and adjoining towns two or three thousand dollars for cattle and sheep, produce, and borrowed money, with the aid of his [meaning the plaintiff's] brother-orator statesman got himself [meaning the plaintiff] into a position where the law could not reach him [meaning the plaintiff, and meaning that he was dishonest and acted fraudulently in his business transactions immediately prior to his adjudication of bankruptcy], and with $100,000 in the family consisting of the father and two sons, of which he [meaning the plaintiff] was one, took advantage of the bankruptcy law, and these farmers lost the proceeds of their honest labor. [Meaning that the plaintiff was amply able to pay all claims and demands existing against him at the time of filing his aforesaid voluntary petition in bankruptcy, yet he dishonestly and fraudulently obtained his discharge thereunder.] It seems to me that by comparison [meaning by comparison with the plaintiff] the thief who puts his hand in your pocket and steals your money is a gentleman. [Meaning thereby that the plaintiff is worse than a thief, that he has committed the crime of robbery, and that the methods employed by him were more contemptible than those of a pickpocket.] Now he [meaning the plaintiff] gets up in town and cries, ' Brother farmers, we are being swindled and abused. Follow me [meaning the plaintiff]; I 'll [meaning the plaintiff] be your leader. You 'll be all right.' Farmers, how did you come out with this man [meaning the plaintiff] before? [Meaning and intimating that the plaintiff had in his transactions with the farmers of his own and adjoining towns swindled and defrauded them, referring to his bankruptcy proceedings aforesaid.] Do you want any more of him? [Meaning the plaintiff, and that any relation with him would be to their detriment.]"

The defendant demurred to the declaration because (1) the words of the alleged defamatory publication are not actionable in and of themselves, and the declaration does not allege that the plaintiff has sustained any special damages; (2) the words are capable of an innocent construction, and in such cases it cannot be shown that the defendant used them in a libelous sense, even if he alleges it by way of an inuendo. The demurrer was overruled by *Stone*, J., at the November term, 1905, of the superior court, and the defendant excepted.

*Everett C. Howe, Smith & Smith*, and *Oliver E. Branch*, for the plaintiff.

*Fred C. Cleaveland* and *Scott Sloane*, for the defendant.

YOUNG, J.   Any written words which directly or indirectly charge a person with a crime, or which tend to injure his reputation in any other way, or to expose him to public hatred, contempt, or ridicule, are defamatory.   Such words, if published without lawful excuse or justification, constitute a libel, and the person in respect to whom they are written may maintain an action for them without either alleging or proving special damages.   *Giles* v. *Company*, 69 N. H. 92; *Palmer* v. *Concord*, 48 N. H. 211; Newell S. & L. (2d ed.) 43–45.   See, also, 18 Am. & Eng. Enc. Law (2d ed.) 909, 914–916, where the authorities on this subject are collated.

When the words of an alleged defamatory publication are capable of more than one meaning, it is the office of the inuendo to explain or point out the sense in which it is claimed they were used.   *Sturtevant* v. *Root*, 27 N. H. 69, 73.   If they are capable of being used in the sense charged in the inuendo, the question whether or not they were so used is for the jury; for notwithstanding whether they are capable of that construction is a question of law, whether that was the sense in which they were used is a question of fact.   *Thompson* v. *Company*, 91 Me. 203; *Smart* v. *Blanchard*, 42 N. H. 137, 149; *Crane* v. *Darling*, 71 Vt. 295; *Call* v. *Hayes*, 169 Mass. 586, 592; *Tiepke* v. *Company*, 20 R. I. 200; *Cook* v. *Bostwick*, 12 Wend. 48, 50; *Sturt* v. *Bragg*, 10 A. & E. N. S. 906.   Consequently, if the words of this publication are capable of being used in the sense in which the plaintiff alleges they were used, and if when so used they are actionable without showing the plaintiff has sustained special damages, the demurrer was properly overruled.

It is obvious that the words, "Another would-be statesman, who a few years ago owed the farmers of this and adjoining towns two or three thousand dollars for cattle and sheep, produce, and borrowed money, with the aid of his brother-orator statesman got himself into a position where the law could not reach him, and with $100,000 in the family consisting of the father and two sons, of which he was one, took advantage of the bankruptcy law, and these farmers lost the proceeds of their honest labor.   It seems to me that by comparison the thief who puts his hand in your pocket and steals your money is a gentleman," are capable of the construction that the plaintiff "was dishonest and acted fraudulently in his business transactions immediately prior to his adjudication of bankruptcy."   If this was the sense in which the defendant used these words, this action can be maintained, for it is not even suggested that there was any lawful excuse for publishing them; and if they do not insinuate that the plaintiff is a thief, or that he is guilty of an offence under the bankruptcy act (*Gendron* v.

*St. Pierre, ante, p.* 419, 423), they obviously tend to injure his reputation for honesty and fair dealing and to expose him to the contempt, if not the hatred, of all his neighbors and friends.

*Exception overruled.*

All concurred.